# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOSEPH HARRY LEE,

  *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

  *Defendant*.

_____/

CASE NO. 09-CV-14187

DISTRICT JUDGE SEAN F. COX
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 20.)

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 13 at 14, 39.) Plaintiff's relevant employment includes work as a mechanic,[2] equipment operator, carpenter and truck stop attendant. (Tr. at 51.) Plaintiff filed the instant claim on June 28, 2007, alleging that he became unable to work on August 19, 2000.[3] (Tr. at 39.) The claim was denied at the initial administrative stages. (Tr. at 23.) In denying Plaintiff's claims, the Defendant Commissioner considered muscle/ligament disorder and fascia as possible bases of disability. (*Id.*) On July 24, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Richard L. Sasena, who considered the application for benefits *de novo*. (Tr. at 14.) In a decision dated December 1, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 14-22.) Plaintiff requested a review of this decision on January 5, 2009. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 25, 2009, when, after the review of additional exhibits[4] (Tr. at 461-65), the Appeals Council denied Plaintiff's request for review. (Tr. at 6-9.) On October 23, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2] I note that the application itself reads "machanic," but I assume that this is a typographical error.

[3] I further note that Plaintiff's application indicates that his "disability ended in August 2000," but I again assume that this is an error. (Tr. at 39.)

[4] In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the

claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.  Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis; however, since neither the ALJ nor the Appeals Council reached any issues beyond Step One, the analysis is limited to the question whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.

## D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of August 19, 2000, through his date last insured of December 31, 2004.[5] (Tr. at 16.) At step two, the ALJ found that Plaintiff's status post rotator cuff surgery and history of epicondylitis were severe impairments within the meaning of the second sequential step. (Tr. at 17.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform his past relevant work as a carpenter, mechanic, or material handler. (Tr. at 21.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19-21.)

## E. Administrative Record

A review of the record evidence indicates that Plaintiff was treated by Steve A. Petersen, M.D., for complications arising from an accident occurring at work in August 2000 when a "drill bit got caught and torqued his right upper extremity." (Tr. at 70.) Dr. Petersen concluded that Plaintiff suffered a "[r]ight shoulder infraspinatus muscle strain." (Tr. at 72.) Plaintiff was also treated by Daniel Olenchek, D.O., for the same injury from 2000 to 2002. (Tr. at 76-82, 120-28, 145-225.)

---

[5]In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Social Security*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975)); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Neither party takes issue with this conclusion.

On April 17, 2001, Plaintiff underwent successful surgery to repair "small rotator cuff tear, right shoulder." (Tr. at 83-85.) Plaintiff participated in physical therapy in 2000 prior to surgery, after surgery, and throughout most of the remainder of 2001 and 2002. (Tr. at 98-113, 226-37, 238-58.) Plaintiff also sought treatment with John R. Wagner, Jr., M.D. for "lateral epicondylitis, right elbow" from 2001 to 2002. (Tr. at 260-66.) In addition, Plaintiff was evaluated by Terry L. Weingarden, D.O., throughout this time period for the Michigan Construction Industry group. (Tr. at 267-82.)

On October 24, 2001, an MRI of Plaintiff's right shoulder revealed "[n]o high grade bony outlet encroachment," "[r]otator cuff tendinopathy of moderate severity with evidence of minimal peritendinitis," and a "[s]mall rotator cuff tear involving the far anterior aspect of the supraspinatus tendon, most compatible with a partial-thickness, intrasubstance tendon test" and "[n]o full-thickness cuff tear." (Tr. at 115.) In November 2001, Plaintiff underwent a right shoulder arthrogram which revealed "small, delayed full thickness communication or tear, right rotator cuff (at junction of supraspinitus/infraspinatus tendons)" and "possible" "ossific or calcific density . . . small projecting osteochondroma." (Tr. at 118.)

A nerve conduction study of the "mid and lower cervical paraspinals on the right" performed in December 2001 was "unremarkable." (Tr. at 129.) At the same time, Steven T. Plomaritis, D.O., noted Plaintiff's "[c]uff tear with contracture of the right shoulder" and "[r]esidual deltoid injury." (Tr. at 130-32.)

In January 2002, Thomas R. Perkins, D.O., diagnosed "impingement syndrome, recurrnet, chronic, s/p open acromioplasty, rotator cuff repair, AC joint arthrosis, biceps tendonitis, [and] probable full thickness rotator cuff re-tear right shoulder." (Tr. at 134.) Dr. Perkins recommended rotator cuff repair surgery and noted that Plaintiff "likely would be on significant restrictions after

the surgery, and in great likelihood would not return to the heavy laborious job that he had as a rough carpenter prior to this initial surgery." (Tr. at 134.) Later that month, Dr. Olenchek noted that arm function, while still diminished, had improved. (Tr. at 149.) The doctor encouraged Plaintiff to continue with a home exercise program (Tr. at 151), and reiterated this recommendation in November 2001. (Tr. at 153.)

In March 2002, a Functional Capacity Evaluation was conducted by Karen Murphy, a registered occupational therapist, in which she concluded that Plaintiff could stand continuously for 60 minutes, with total endurance of 105 minutes, walk continuously for 15 minutes, with total endurance of 20 minutes, and sit continuously for 50 minutes with total endurance for 98 minutes. (Tr. at 135.) In addition, she found that Plaintiff could lift five pounds from floor to knee, knee to waist, and waist to shoulder, but that Plaintiff could not lift from shoulder to overhead. (*Id.*) She concluded that Plaintiff demonstrated the residual capacity to perform tasks in the sedentary category of work with restrictions on lifting weight to overhead level, lifting no greater than 5 pounds from the floor to shoulder level, bilateral carrying of no more than 15 pounds, restrictions with right hand carry tasks greater than 3 pounds, and restrictions for sustained or repetitive movements at waist or overhead level. (Tr. at 137.) Dr. Olenchek then adopted these findings as his own. (Tr. at 144.)

In April and May 2002, Plaintiff was also treated by Wathek Sakka, M.D., for shoulder pain. (Tr. at 293-94.)

The only psychiatric evidence presented was performed outside of the date last insured of December 31, 2004. Plaintiff sought counseling treatment with Community Care Services from 2007-08. (Tr. at 421-60.) In May 2008, an examination was conducted by a Disability Determination Service (DDS) psychiatrist who concluded that Plaintiff has major depressive

disorder, recurrent, in partial remission, and chronic panic disorder. (Tr. at 376-78.) A Medical Source Statement of ability to do work activities was filled out at the same time. (Tr. at 380-82.) It stated that Plaintiff is mildly restricted in his ability to understand, remember, and carry out simple instructions, moderately limited in his ability to understand, remember, and carry out complex instructions and in the ability to make judgments on complex work-related decisions. (Tr. at 380.) It was further found that Plaintiff is mildly restricted in his ability to interact appropriately with the public and supervisors and moderately restricted in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. at 381.) Plaintiff was not found to be markedly or extremely limited in any ability.

Plaintiff testified at the administrative hearing held in March 2007 that he stays in the house most of the time, but that he can go outside, drive for short distances, and that he is able to mow his lawn with a tractor. (Tr. at 473-74.) Plaintiff also testified that he was not treated for depression between 2000 and 2004 because he lacked medical insurance. (Tr. at 481.) The ALJ asked the Vocational Expert ("VE") to consider a person with Plaintiff's background who is limited to sedentary, unskilled, simple and repetitive work with two 10 to 15 minute breaks through the day and a lunch break from 30 to 45 minutes and the VE testified that there would be guard and surveillance monitor jobs totaling approximately 1,100 jobs in the Michigan economy and 72,000 jobs nationwide. (Tr. at 486.) The VE also testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 487.)

A second hearing was held on July 24, 2008, wherein Plaintiff's depression was considered. (Tr. at 490- 509.) The ALJ asked the VE to consider a person with Plaintiff's background and with restrictions of not lifting over 5 pounds with the dominant right arm, not carrying more than 15 pounds, no right arm carrying of more than 3 pounds for 25 feet, left hand carrying no more than

50 pounds, no overhead lifting with the right arm, no use of power tools with the right arm, no constant reaching, handling, fingering or feeling with the right arm and at the sedentary level, and the VE testified that such a person could perform surveillance monitor, stationary watch person, and greeter jobs which number 1,200 in the Southeast Michigan area and 60,000-75,000 jobs in the national economy. (Tr. at 505.) The VE further testified that restrictions to no more than 3 to 5 pounds with the right hand, no ladders, and only occasional climbing, balancing, stooping, kneeling, crouching or crawling, no vibrating tools, and only simple, routine, repetitive tasks would not change his evaluation. (Tr. at 506.) The VE also testified that his testimony did not conflict with the DOT. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform sedentary work. (Tr. at 19-21.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2.     **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically argues that "the ALJ ignored the medically documented pain that the claimant suffers the ALJ brushed aside the claimant's history of depression without serious analysis as required by the statute . . . . [H]e also may not discredit testimony regarding depression in this instance without a detailed explanation and analysis just because there was not a long history of medical treatment to support it." (Doc. 15 at 3.) Plaintiff adds that "despite being aware of the petitioner's lack of financial resources, the Social Security Administration including the ALJ took no action to evaluate the petitioner's mental illness." (Doc. 15 at 4.)

a.     **Plaintiff's Testimony Regarding Pain and Depression**

As to the ALJ's findings that Plaintiff's complaints of disabling pain and other symptoms were not fully credible, Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can

reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence and for all the reasons stated above, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding the level of pain was not fully credible. As to physical limitations, the ALJ did not discount them because the hypothetical presented at both hearings included severe limitations on use of his right arm. (Tr. at 486-87, 505-06.) As to Plaintiff's mental limitations, even though the evidence of this impairment

was outside the date last insured, the ALJ nonetheless incorporated some mental limitations into the hypothetical at both hearings, i.e., the limitation to simple and repetitive tasks. (*Id.*)

I suggest that the ALJ properly found that Plaintiff's pain and other symptoms, although limiting, were not disabling. The objective medical evidence of record clearly established right shoulder impairment, but provided no support for a finding that the remainder of Plaintiff's physical capabilities were impaired. The Functional Capacity Evaluation conducted in March 2002 concluded that Plaintiff demonstrated the residual capacity to perform tasks in the sedentary category of work with restrictions adopted by the ALJ and this finding was supported by Plaintiff's treating physician Dr. Olenchek. (Tr. at 137, 144.) The psychiatric evidence, even if it were to be considered, showed only mild and moderate restrictions in Plaintiff's abilities that would be inconsistent with disability. (Tr. at 380-82.)

I therefore suggest that the ALJ's decision that objective medical evidence does not confirm the severity of the alleged pain rising from the condition is supported by substantial evidence.

### b. Financial resources

As to Plaintiff's argument that he lacked the financial resources to seek medical assistance for his psychological impairments, I suggest that this argument is unavailing because the ALJ considered the evidence of mental impairment offered at the second hearing. Even if the ALJ had not considered any evidence of mental impairment and Plaintiff argued, as he does here, that his failure to provide evidence of any mental impairment is due to the fact that he could not afford psychiatric treatment, I suggest that the result is the same. If a Plaintiff can show that his failure to obtain treatment was attributable to lack of financial resources, an ALJ may decide that the failure to do so does not undermine the credibility of Plaintiff's subjective complaints; however,

an ALJ cannot justify a conclusion that Plaintiff attempted to seek psychiatric treatment where Plaintiff presents no evidence of such attempts but merely makes a conclusory assertion that he has done so. *See Esch v. Comm'r of Social Security*, No. 1:09-cv-144, 2010 WL 432265, at *2 (W.D. Mich. Jan. 25, 2010). Since Plaintiff has failed to come forward with any evidence of attempts to seek psychiatric treatment that were thwarted by the medical field, I suggest that the ALJ properly took no notice of this conclusory assertion.

### c. Conclusion

For all these reasons, and after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                s/ Charles E Binder
                                                CHARLES E. BINDER
Dated: September 9, 2010                 United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: September 9, 2010         By     s/Patricia T. Morris
                                                Law Clerk to Magistrate Judge Binder